Case 4:23-cv-00134-KGB   Document 2   Filed 02/16/23   Page 1 of 12

Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2023-Jan-03  17:01:48
60CV-23-19
C06D12 : 12 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

CIVIL DIVISION

HOLLY CRAVENS SPEED                                             PLAINTIFF

VS.                     N0. 60CV-23-_____

MARILYN YVONNE RAY                                              DEFENDANT

## VERIFIED COMPLAINT

COMES the Plaintiff, Holly Cravens Speed, by and through her attorney, John R. Myers and for her Verified Complaint states the following:

1. Plaintiff is a resident of Pulaski County, Arkansas. The facts giving rise to this cause of action occurred in Arkansas.

2. Jurisdiction of this cause is proper in this state, venue is proper in this county pursuant to ARCP 16-60-101(a)(3)(A)

3. Defendants, Marilyn Yvonne Ray (Yvonne), her husband Kenny Ray and their son John Ray reside in the State of Illinois at 1520 Market Rd., Marion, IL 62959.

4. Defendant Marilyn Yvonne Ray was physically present in this state when committing the acts giving rise to this cause of action.

## FACTUAL BACKGROUND

5. Mickey Owens Cravens (Mr. Cravens), age 84, who resided at Clinton, Arkansas, died on July 27, 2022. A copy of his death certificate is attached as EXHIBIT A.

6. Plaintiff is the daughter of Mickey Owen Cravens.

7. Defendant Marilyn Yvonne Ray (Yvonne) and Mickey Owens Cravens are siblings.

8. On January 11, 2013, Mickey Owen Cravens made The Mickey O. Cravens Revocable Trust (the Trust), naming himself grantor and trustee of the Trust. He subsequently amended the Trust on January 12, 2019, by executing a certificate of



EXHIBIT A

amendment dated August 15, 2019. He made a 2ND Ratification and Clarification To Original Trust dated March 16, 2021.

9.  The relevant parts of the Trust as amended are attached as EXHIBIT B.

10. Pursuant to the express terms of the Trust, upon Mr. Cravens' death, his adult daughter, the plaintiff Holly Lynn (Cravens) Speed was to receive the sum of any Certificates of Deposit (C.D.s) with her as pay- on- death (P.O.D.) beneficiary.

11. Mr. Cravens designated Plaintiff P.O.D. beneficiary of six C.D. accounts. A copy of all such C.D.s and signature cards is attached as Exhibit C.

12. Two of Mr. Cravens' C.D. accounts were at Bank OZK, Clinton:

   #2865 - opened 05/10/2022 in the amount $70,000.00, and

   #4631 - opened 07/01/2021 in the amount $51,259.56.

   Four of Mr. Cravens' C.D. accounts were at FNB, Heber Springs:

   #8920 - opened 11/05/2021 in the amount $130,000.00,

   #2937 - opened 12/21/2017 in the amount $ 32,000.00,

   * #8040 - opened 08/27/2020 in the amount $142,390.85, and

   * #6640 - opened 07/26/2019 in the amount $ 40,000.00

   (*Prior to the account closing withdrawal, accounts #6440 and #8040 were combined in single account number, #8040.)

13. The most recently opened C.D. with Plaintiff designated P.O.D. beneficiary is dated May 10, 2022.

14. On July 4, 2022, Mr. Cravens, became very ill.

15. On July 4, 2022, Mr. Cravens telephoned Plaintiff to tell her he was unwell and very weak. He told her had fallen earlier that day and was taken to the hospital in Clinton, Arkansas and there tested positive for COVID-19. He needed assistance getting from his home into a vehicle for transportation to the hospital by his neighbor and her Neighbor's son.

16. At the time of receiving Mr. Cravens' call, Plaintiff was aware Mr. Cravens had recently been seen by a doctor and prescribed medicine for treating his urinary tract infection and had fallen on previous occasions.

17. On July 4, 2022, Mr. Cravens neighbor found Mr. Cravens in his home, on the floor near his bed, too weak to stand-up and walk without assistance.

18. On July 5, 2022, Plaintiff drove to Mr. Cravens' home, where he lived alone, at 515 Wright Ln., Clinton, Arkansas 72031, to help him get out of bed and ready to for a trip to the hospital.

19. On July 5, 2022, with Plaintiff's assistance and the use of a walker, Mr. Cravens got into her car. Plaintiff drove him from Clinton to the Baptist Health Medical Center (BHMC), Conway. Plaintiff was concerned that he was too weak to properly care for himself at home and needed medical treatment.

20. On July 5, 2022, upon arriving at BHMC – Conway, Emergency Department Mr. Cravens was examined and admitted to the hospital.

21. On July 5, 2022, upon examining Mr. Cravens, a physician at BHMC - Conway found Mr. Cravens too weak to care for himself at home and suffering from COVID-19, dehydration and hyponatremia (a condition which can cause confusion and fatigue). He was considered at risk of falling and confined to his bed or wheelchair. He was too weak to get himself out of bed or walk.

22. On July 6, Marilyn Yvonne Ray (Yvonne), Mr. Cravens' sister, traveled to Clinton from her home in Illinois, ostensibly to help Plaintiff care for Mr. Cravens while hospitalized. Yvonne didn't visit Mr. Cravens in the hospital until July 7.

23. Upon arriving in Clinton, Arkansas, Yvonne was given a key for access to Mr. Cravens' residence, where at various times she, her husband, her son and grand daughter stayed during Mr. Cravens' hospitalization, in-home Hospice care and after his death.

24. Yvonne stayed in Mr. Cravens' home and had full access to all of Mr. Cravens' files and financial records. Mr. Cravens' financial files were maintained in an unlocked filing cabinet in his home office. Mr. Cravens was a retired accountant and meticulous record keeper.

25. At BHMC on the morning of the July 7, 2022, medical professionals observed Mr. Cravens having stroke-like symptoms. The left side of his face was drooping, he was having great difficulty speaking (aphasia) and swallowing (aphagia) and his left arm and leg were paralyzed and not functional. A STAT CT scan done that day confirmed Mr. Cravens had a severe Cerebral Vascular Accident (CVA), commonly known as a stroke. His impairments caused by this were obvious, including the effect on his cognitive ability and mental status.

3

26.    After his stroke Mr. Cravens remained in the hospital, in his hospital bed until he was returned to his home to receive Hospice care.

27.    After his stroke, Mr. Cravens had great difficulty eating and drinking because he couldn't swallow. Whenever he was awake, the nursing staff encouraged Mr. Cravens to eat and drink. He constantly slumped toward the side of his paralysis. He slept most of the time and did not initiate conversation, engage in conversation or watch T.V. Mr. Cravens seemed to be withdrawn and very confused. If he repeated words several times he could usually be understood, however, he often spoke nonsensically: when the words he spoke could be understood they were merely disconnected words without a message. His cognition could not be evaluated by hospital PT/OT staff because of his delayed responses in the evaluation process.

28.    Plaintiff and Yvonne agreed to take turns watching Mr. Cravens in the hospital. They agreed that Plaintiff would watch him in the morning and Yvonne would watch him in the evening. In the days leading up to January 11, 2022, Mr. Cravens grew weaker and sicker with COVID-19. The effects of his stroke remained unchanged.

29.    On July 11, 2022, in the days leading up to it, Mr. Cravens remained in his hospital bed at BHMC - Conway suffering the physical and mental deficits of a severe stroke, battling a COVID-19 infection, needing an oxygen cannula to breath, lacking the strength to stand, walk, dial his cell telephone or speak intelligibly, growing weaker with COVID-19, the effects of his stroke unchanged.

30.    On or before July 11, 2022, Yvonne began the process of procuring changes to the designated P.O.D. beneficiary on each of Mr. Cravens C.D. accounts. In doing so, Yvonne caused Plaintiff to be removed as designated P.O.D beneficiary on each of Mr. Cravens C.D. accounts and herself, Marilyn Yvonne Ray inserted as the designated P.O.D. beneficiary.

31.    The activity of changing the designated P.O.D. beneficiary on Mr. Cravens C.D.s was initiated by Yvonne and her artifice carried out in secrecy while Mr. Cravens remained in his hospital bed, battling a COVID-19 infection, on oxygen, unable to stand or walk, dial the telephone or speak intelligibly.

32.    To procure the said P.O.D. beneficiary changes Yvonne initiated telephone calls, spoke with and worked with bank personnel, shuttled documents between the banks and Mr.

4

Cravens hospital bed. Yvonne got Mr. Cravens to make his mark or wrote his name on bank documents to remove Plaintiff as the designated P.O.D. beneficiary from each of the above described C.D. accounts and to have her own name, Marilyn Yvonne Ray, inserted in its place.

33. A copy of the C.D. account modifications procured by Marilyn Yvonne Ray are attached as EXHIBIT D.

34. Yvonne kept her activity secret from Plaintiff.

35. On August 3, 2022, the first day Mr. Cravens' Death Certificate was available to Yvonne, the entire sum of the C.D.s, including principal and interest, $472,544.89, was paid over to Yvonne

36. Had Mr. Cravens died prior to July 11, 2022, the C.D. accounts would have become Holly Speed's C.D. accounts. A copy of each C.D. account closing withdrawal record is included in EXHIBIT D.

37. Based upon her knowledge and familiarity with Mr. Cravens, including her daily observations and experiences with Mr. Cravens while he was hospitalized during the period July 5 -11, 2022, Plaintiff believes Mr. Cravens was not in any way concerned with his financial matters, paying his bills, or changing the designated P.O.D. beneficiary of his C.D.s. During that time he could not hold such a conversation or did he attempt to hold a such a conversation. He was very seriously ill and weakened mentally and physically and impaired by a severe stroke. He was not in his right mind, lacking the mental capacity to know his circumstances or the disposition of his assets in order to make changes to his Trust or the designated P.O.D beneficiary of his C.D.s.

38. Based upon the history of the father-daughter relationship Mr. Cravens and Plaintiff shared, Plaintiff knows of nothing that ever would have given Mr. Cravens any cause or reason to break from his estate planning and change the designated P.O.D. beneficiary on his C.D.s.

39. During the time July 5-11, 2022, while in the hospital suffering extreme physical weakness and mental impairment caused by his urinary tract infection, a life threatening COVID-19 infection and the effects of a paralyzing stroke, Mr. Cravens could not have acted and alone and did not knowingly act to change the designated P.O.D. beneficiary on his C.D.s.

40. Given Mr. Cravens physical and mental condition, Plaintiff does not believe would have been thinking about his C.D.s or the P.O.D beneficiaries at the time Yvonne procured changes to them for her benefit.

41. Given the father-daughter relationship Plaintiff and Mr. Cravens shared and assuming, for the sake of argument, he had testamentary capacity, only mistake of fact or misrepresentation would caused Mr. Cravens to change his P.O.D. beneficiary and not follow through with his estate plan.

42. Yvonne knew that she had been inserted as the designated P.O.D. beneficiary on all of the C.D.s listed in paragraph 6 above and shown in Exhibit B.

43. On August 3, 2022, the date the Death Certificate of Mickey Owen Cravens was first available, Marilyn Yvonne Ray, presented that Death Certificate to FNB, Heber Springs, withdrew the balance in each account and closed the account. On that day she received $351,002.88 from FNB, Heber Springs by wire transfer to an account, or accounts that remains unknown to Plaintiff at this time. Records of the FNB account closing withdrawals and wire transfers to Marilyn Yvonne Ray are included in EXHIBIT D.

44. On August 3, 2022, Marilyn Yvonne Ray presented the Death Certificate to Bank OZK, Clinton, closed the accounts and withdrew $121,542.01. The records of the account closing withdrawals by Marilyn Yvonne Ray are attached as EXHIBIT D.

45. At no time during his hospitalization or subsequent in-home hospice care did Mr. Cravens speak of or otherwise bring attention his need for money, his Trust, his Will, his bank accounts, his C.D.s. He had thousands of dollars in his checking account and the hospital was yet to submit a bill. No one was asking for money owed by Mr. Cravens. None of his financial documents were present in his hospital room or around his Hospice care bed in his home.

46. At various times since procuring changes to Mr. Cravens designated P.O.D. beneficiary from Plaintiff to herself, Yvonne mentioned the need for money to pay bills for Mr. Cravens' hospitalization and Hospice. She has also repeatedly stated she has done nothing wrong in all of this.

6

## COUNT I.
## PROCUREMENT
## UNDUE INFLUENCE
## CONSTRUCTIVE TRUST-UNJUST ENRICHMENT

47.   Plaintiff incorporates paragraphs 1 through 46 of this complaint as if fully set forth here.

48.   At all relevant times when Mr. Cravens was exercising rational, independent judgment and free from duress, undue influence, misrepresentation, or other wrongful conduct, he intended that Plaintiff receive all of the above-mentioned certificates of deposit at his death.

49.   As recently as May 10, 2022, Mr. Cravens opened a $70,000.00 C.D. with Plaintiff the P.O.D. beneficiary.

50.   At the time Yvonne procured changes to the designated P.O.D. beneficiary of Mr. Cravens' C.D. accounts making herself the beneficiary of them, Mr. Cravens was a patient in the hospital, unable to get himself out of bed or walk, on oxygen, greatly weakened physically and mentally by a severe stroke effecting his left side, Covid-19 and other illnesses.

51.   At the time Yvonne procured changes to the designated P.O.D. beneficiary of Mr. Cravens' C.D. accounts making her the beneficiary of them, she was staying in Mr. Cravens' home with full access to his home and the bank records he kept there.

52.   At the time Yvonne procured changes to the designated P.O.D. beneficiary of Mr. Cravens' C.D. accounts making her the beneficiary of them, Plaintiff and Yvonne sat with Mr. Cravens in the hospital at alternating times.

53.   At the time Yvonne procured changes to the designated P.O.D. beneficiary of Mr. Cravens' C.D. accounts, making her the beneficiary of them, she did so secretly from Plaintiff.

54.   Plaintiff was the natural object of Mr. Cravens' bounty and they shared father-daughter affection, were on good terms and he kept up with the lives of Plaintiff's children by phone and visits.

55.   The changed designated P.O.D. beneficiary procured by Yvonne is a departure from Mr. Cravens' intended estate plan.

56.   The changed designated P.O.D. beneficiary on Mr. Cravens C.D.s are not the product of Mr. Cravens own free will but are the product of undue influence upon Mr. Cravens by his sister Yvonne.

7

57. Because of the undue influence of Yvonne, modifications of the P.O.D. beneficiary designations of Mr. Cravens' C.D.s are void.

58. Yvonne took and holds $472,544.89 from the C.D.s following the death of Mr. Cravens.

59. Yvonne holds $472,544.89 from the C.D.s in trust for Plaintiff.

60. Plaintiff has demanded that Yvonne pay $472,544.89 to Plaintiff but defendant has refused to do so.

61. Defendant would be unjustly enriched if allowed to retain the funds received from the C.D.s.

62. The amount of defendant's unjust enrichment is in excess of the minimum jurisdictional limit in U. S. District Court.

WHEREFORE, Plaintiff respectfully requests that:

a. Yvonne be adjudged to have procured the above referenced modifications to Mr. Cravens C.D.s solely for her own benefit and said modification are not the act of Mr. Cravens free will but Yvonne's;

b. Yvonne be adjudged trustee for the sum of $472,544.89 withdrawn from the above referenced C.D. accounts and be required to disclose and account for such sum (or any funds into which it has been invested):

c. A lien for the sum of $472,544.89 said Plaintiff's share be impressed on such fund, or any property into which it has been invested or converted, and such lien foreclosed;

d. If Yvonne has dissipated the fund, the Plaintiff have judgment against Yvonne personally for any amount belonging to Plaintiff that cannot be otherwise restored to Plaintiff, with interest on such amount as allowed by law;

e. Plaintiff be awarded costs and attorney fees of this action; and

f. Plaintiff be granted such other and further relief as the court deems just and proper.

## COUNT II.
## LACK OF MENTAL CAPACITY
## CONSTRUCTIVE TRUST-UNJUST ENRICHMENT

63. Plaintiff incorporates paragraphs 1 through 62 of this complaint as if fully set forth here.

64. At the times the designated P.O.D. beneficiary were changed, Mr. Cravens lacked the necessary mental capacity to make the modifications and the resultant causa mortis gifts to defendant alone.

65. Because of Mr. Craven's incapacity, the modifications of the P.O.D. provisions of the certificates of death are void.

66. Defendant took and holds $472,544.89, or 100% of the value of the certificates of deposit following the death of Mr. Cravens.

67. Defendant holds the sum of $472,544.89 in trust for Plaintiff.

68. Plaintiff has demanded defendant pay to Plaintiff Plaintiff's share of the certificates of deposit but defendant has refused to do so.

69. Defendant would be unjustly enriched if allowed to retain the said funds received from the certificates of deposit.

70. The amount of defendant's unjust enrichment is in excess of the minimum jurisdictional limit of U.S. District Court.

WHEREFORE, Plaintiff respectfully requests that:

a. Yvonne be adjudged a trustee for $472,544.89 of the certificates of deposit received from the above-mentioned banks, and be required to disclose and account for such sum (or any funds into which it has been invested):

b. A lien for Plaintiff be impressed on such fund, or any property into which it has been invested or converted, and such lien foreclosed:

c. If Yvonne has dissipated the fund, the Plaintiff have judgment against Yvonne personally for any amount belonging to Plaintiff that cannot be otherwise restored to Plaintiff, with interest on such amount as allowed by law;

d. Plaintiff be awarded costs and attorney fees in this action; and

e. Plaintiff be granted such other and further relief as the court deems just and proper.

9

## COUNT III.

### MISTAKE OF FACT OR MISREPRESENTATION
### CONSTRUCTIVE TRUST-UNJUST ENRICHMENT

71. Plaintiff incorporates paragraphs 1 through 70 of this complaint as if fully set forth here.

72. Mr. Cravens was induced by a mistake of fact or misrepresentation to change the designated P.O.D. beneficiary provisions of the certificates of deposit and the resultant causa mortis gift to Yvonne.

73. Absent the mistake of fact or misrepresentation, Mr. Cravens would not have modified the P.O.D provisions of the C.D.s and the resultant causa mortis gifts to defendant.

74. Because Mr. Cravens would not have modified the P.O.D. provisions of the certificates of deposit and made the resultant causa mortis gifts to Plaintiff in the absence of the mistake of fact or misrepresentation, the modification of the payable-on-death provisions of the certificates of deposit are void.

75. Defendant took and holds all of the value of the certificates of deposit following the death of Mr. Cravens.

76. Defendant holds $472,544.89 of the value of the certificates of deposit in trust for Plaintiff.

77. Plaintiff has demanded that defendant pay $472,544.89 to Plaintiff, but defendant has refused to do so.

78. Defendant would be unjustly enriched if allowed to retain $472,544.89 she received from the Mr. Cravens C.D.s.

79. The amount of defendant's unjust enrichment is in excess of the minimum jurisdictional limit of U.S. District Court.

WHEREFORE, Plaintiff respectfully requests that:

    a. Yvonne be adjudged a trustee for the value of the certificates of deposit received from the above-mentioned banks, $472,544.89 in total, and be required to disclose and account for such sum (or any funds into which it has been invested);

    b. A lien for Plaintiff be impressed on such fund, or any property into which it has been invested or converted, and such lien foreclosed;

c. If defendant has dissipated the fund, that Plaintiff have judgment against defendant for any amount belonging to Plaintiff that cannot be otherwise restored to Plaintiff, with interest on such amount as allowed by law;

d. Plaintiff be awarded attorney fees and costs of this action; and

e. Plaintiff be granted such other and further relief as the court deems just and proper.

Respectfully submitted,

HOLLY CRAVENS SPEED

By: /s/ John R. Myers
_____
John R. Myers (ABN 95077)
Attorney for Plaintiff
1501 N. University Ave., #229
Little Rock, AR 72207
(501) 663-4700
(501) 372-2530 fax
johnmyerslawfirm@sbcglobal.net

## VERIFICATION OF PLAINTIFF

STATE OF ARKANSAS   )
                    )
COUNTY OF PULASKI   )

I, Holly Cravens Speed, hereby state and affirm that I have read and understand the allegations and viewed the Exhibits set out in the foregoing Complaint, that they are true and correct and based upon my knowledge, information and belief.

_____
HOLLY CRAVENS SPEED

HOLLY CRAVENS SPEED

By: /s/ John R. Myers
_____
John R. Myers (ABN 95077)
Attorney for Plaintiff
1501 N. University Ave., #229
Little Rock, AR 72207
(501) 663-4700
(501) 372-2530 fax
johnmyerslawfirm@sbcglobal.net

## VERIFICATION OF PLAINTIFF

STATE OF ARKANSAS   )
                    )
COUNTY OF PULASKI   )

I, Holly Cravens Speed, hereby state and affirm that I have read and understand the allegations and viewed the Exhibits set out in the foregoing Complaint, that they are true and correct and based upon my knowledge, information and belief.

_Holly Cravens Speed_
HOLLY CRAVENS SPEED

Subscribed and sworn to me this 19th day of December, 2022.

**LAURA L BUCHANAN**
LONOKE COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires July 27, 2032
Commission # 12389150

_Laura L. Buchanan_
NOTARY PUBLIC

SEAL

11